**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

FILED
LODGED

APR 1 6 2009

AT GREENBELT
CLERK U.S. DISTRICT CO
DISTRICT OF MARYLAND

**ITPE PENSION FUND, and DENNIS ARRINGTON**
**JERRY BOWDEN, JOHN BRENTON, JOHN CONLEY,,**
**HAROLD E. GELBER, MICHAEL GOODWIN,**
**PAUL HARVEY, THEATLA JONES, SIDNEY KALBAN,**
**JAY LIPSCOMB, ARTHUR McZIER, RICHARD B. ROWE,**
**FRED SMITH, and WILLIAM SPENCER,**
**as Trustees of the ITPE Pension Fund**
**c/o ERISA SYSTEMS, INC.**
**216 North Ave. East, 2nd Floor**
**Cranford, NJ 07016**

**Civil Action No.**

and

RWT 09 CV 0979

**ITPE HEALTH AND WELFARE FUND and DENNIS**
**ARRINGTON, JERRY M. BOWDEN, JOHN BRENTON,**
**JOHN F. CONLEY, DENNIS CONLEY, CINDY DIEHM,**
**MERL DICKERSON, HAROLD E. GELBER, PAUL HARVEY,**
**J.P. HOLLOMAN, THEATLA JONES, ARTHUR McZIER,**
**HAROLD L. SHERLEY, FRED SMITH, and JOHNNY VOUDOURIS,**
**as Trustees of the ITPE Health and Welfare Fund**
**24 Oglethorpe Professional Blvd.**
**Savannah, GA   31406**

**Plaintiffs,**

v.

**DTM CORPORATION**
**1320 Fenwick Lane, Suite 700**
**Silver Spring, MD 20906**

**Defendant.**

---

**COMPLAINT FOR CONTRIBUTIONS, INTEREST AND**
**LIQUIDATED DAMAGES OWED TO EMPLOYEE BENEFIT PLANS**

ITPE Pension Fund, ITPE Health and Welfare Fund, Dennis Arrington, Jerry M.

Bowden, John Brenton, John F. Conley, Dennis Conley, Merl Dickerson, Cindy Diehm, Harold

E. Gelber, Michael Goodwin, Paul Harvey,, J.P. Holloman, Theatla Jones, Sidney Kalban, Jay

Lipscomb, Arthur McZier, Richard B. Rowe, Harold L. Sherley, Fred Smith, William Spencer,

and Johnny Voudouris, by and through their undersigned counsel, complain and allege as
follows:

## NATURE OF ACTION, JURISDICTION
### AND VENUE

1.      This is a civil action brought by three employee benefit plans and their Boards of
Trustees ("Plaintiffs") pursuant to Sections 502(a)(3), (d)(1), (g) and 515 of the Employee
Retirement Income Security Act of 1974 as amended ("ERISA"), 29 U.S.C. §§1132(a)(3), (d)(1),
(g), and 1145, to collect delinquent contributions, interest and liquidated damages as well as the
costs associated with an audit owed to the employee benefit plans by a contributing employer
pursuant to a collective bargaining agreement and the applicable trust agreements.

2.      The Court has jurisdiction over this action under ERISA Sections 502(a)(3), (d)
(e)(1), and (f), (g) and 515, 29 U.S.C. §§1132(a)(3), (d), (e)(1), (f), (g), and 1145, Section 301 of
the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. §185, 28
U.S.C. §1331, 28 U.S.C. §1337 and 28 U.S.C. §1391.

3.      Venue of this action properly lies in the United States District Court for the
District of Maryland pursuant to ERISA Section 502(e)(2), 29 U.S.C. §1132(e)(2).

## IDENTIFICATION OF THE PARTIES

4.      ITPE Health and Welfare Fund ("Health Fund ") is a multiemployer employee
welfare benefit plan within the meaning of ERISA Section 3(1), (3), and (37)(A), 29 U.S.C.
§1002(1), (3), and (37)(A). It is organized under LMRA Section 302(c)(5), 29 U.S.C.
§186(c)(5). Pursuant to that statute, the Health Fund is governed by a Board of Trustees ("Board

of Trustees"), half of whom are appointed by the Union representing employees covered by the Health Fund and the other half of whom are appointed by participating employers.

5. The Health Fund provides health and other welfare benefits to eligible employees of contributing employers in accordance with a plan of benefits as set forth in the Health Fund's Plan Document. The Plan Document, together with the Health Trust's Agreement and Declaration of Trust, as amended from time to time by the Board of Trustees ("Health Fund Agreement"), are the governing documents of the Health Fund.

6. ITPE Pension Fund ("Pension Fund ") is a multiemployer employee pension benefit plan within the meaning of ERISA Section 3(2), (3), and (37)(A), 29 U.S.C. §1002(2), (3), and (37)(A). It is organized under LMRA Section 302(c)(5), 29 U.S.C. §186(c)(5). Pursuant to that statute, the Pension Fund is governed by a Board of Trustees ("Board of Trustees"), half of whom are appointed by the Union representing employees covered by the Pension Fund and the other half of whom are appointed by participating employers.

7. The Pension Fund provides retirement benefits to employees of contributing employers in accordance with a plan of benefits as set forth in the Pension Fund's Plan Document. The Plan Document, together with the Pension Fund's Agreement and Declaration of Trust, as amended from time to time by the Board of Trustees ("Pension Fund Agreement"), are the governing documents of the Pension Trust.

8. Plaintiffs Dennis Arrington, Jerry M. Bowden, John Brenton, John F. Conley, Dennis Conley, Cindy Diehm, Merl Dickerson, Harold E. Gelber, Paul Harvey, J.P. Holloman, Theatla Jones, Arthur McZier, Harold L. Sherley, Fred Smith and Johnny Voudouris are the current Trustees of the Health Fund. Plaintiffs Dennis Arrington, Jerry Bowden, John Brenton, John Conley, Harold E. Gelber, Michael Goodwin, Paul Harvey, Theatla Jones, Jay Lipscomb,

**4**

Arthur McZier, Richard B. Rowe, Fred Smith and William Spenser are the current Trustees of the Pension Fund. As Trustees, they are all fiduciaries as defined in ERISA Section 3(21), 29 U.S.C. §1002(21).

11.     Defendant DTM Corporation ("DTM") is a Maryland corporation which at all times material to this action has maintained its principal place of business in Silver Spring, Maryland, currently at 1320 Fenwick Lane, Suite 700, Silver Spring, Maryland 20906. It may also be found in and at several other locations throughout the United States, including in Washington, DC, Alexandria, Virginia, and Houston, Texas. At all times material to this action, DTM has employed workers who were and are represented by the Industrial, Technical and Professional Employees Union ("ITPE") and who are participants in the Health Fund and Pension Fund (collectively, Funds"). At all times material to this Complaint, DTM  has been an "employer" in an "industry affecting commerce," as defined by ERISA Section 3(5) and (12), 29 U.S.C. §1002(5), (12). At all times material to this Complaint, DTM has been an "employer" within the meaning of the Health Fund Agreement and the Pension Fund Agreement, and has been bound by the terms and conditions therein.

12.     At all times relevant to this action, DTM and ITPE have been party to a number of collective bargaining agreements, as that term is used throughout ERISA, establishing terms and conditions of employment for individuals employed by DTM and represented by ITPE, including DTM employees at the Social Security Administration in Washington, DC; at the Federal Aviation Administration Tower in Houston, Texas; at the in , Virginia.. The parties have continued to maintain a collective bargaining relationship and to be parties to collective bargaining agreements through to the present and continuing.

5

## DTM'S OBLIGATION TO
## CONTRIBUTE TO THE FUNDS

13.     Pursuant to the collective bargaining agreement for its employees represented by

ITPE and working for DTM in the Social Security Administration in Washington, DC, effective

October 1, 2006 through March 31, 2007, DTM was required to make contributions to the Health

Fund at a rate of $3.01 per hour on behalf of each employee covered by the collective bargaining

agreement. Pursuant to that collective bargaining agreement, effective October 1, 2005 through

November 30, 2006, DTM was required to make contributions to the Health Fund at the rate of

$2.87 per hour on behalf of each employee covered by the collective bargaining agreement.

Further, pursuant to the collective bargaining agreement, effective October 1, 2004 through

September 30, 2005, DTM was required to make contributions to the Health Fund at the rate of

$2.59 per hour on behalf of each employee covered by the collective bargaining agreement.

Further, pursuant to the collective bargaining agreement, effective April 1, 2004 through

September 30, 2004, DTM was required to make contributions to the Health Fund at the rate of

$2.36 per hour on behalf of each employee covered by the collective bargaining agreement.

These contributions are required to be accompanied by reports listing each bargaining unit

employee for whom contributions are owed, along with the hours worked by each such employee

for each monthly reporting period, plus all hours for which a bargaining unit employee was paid.

During the period October 1, 2005 through March 31, 2007, DTM was required to remit

contributions to the Health Fund for all straight time hours worked plus all hours of paid

vacations, holidays and sick leave, for a maximum of 2.080 hours per year for each and every

employee covered by the collective bargaining agreement. During the period April 1, 2004

through September 30, 2005, DTM was required to remit contributions to the Health Fund for all

6

straight time hours worked plus all hours of paid vacations, holidays and sick leave, not to exceed 40 hours in any one week for each and every employee covered by the collective bargaining agreement.

14.    Pursuant to the collective bargaining agreement for its employees represented by ITPE and working for DTM in the Social Security Administration in Washington, DC, effective October 1, 2006 through March 31, 2007, DTM was required to make contributions to the Pension Fund at the rate of $0.80 per hour on behalf of each employee covered by the collective bargaining agreement. Pursuant to that collective bargaining agreement, effective October 1, 2005 through September 30, 2006, DTM was required to make contributions to the Pension Fund at the rate of $0.75 per hour on behalf of each employee covered by the collective bargaining agreement.  Further, pursuant to that collective bargaining agreement, effective April 1, 2004 through September 30, 2005, DTM was required to make contributions to the Pension Fund at the rate of $0.70 per hour on behalf of each employee covered by the collective bargaining agreement. These contributions are required to be accompanied by reports listing each bargaining unit employee for whom contributions are owed, along with the hours worked by each such employee for each monthly reporting period, plus all hours for which a bargaining unit employee was paid. During the period October 1, 2005 through March 31, 2007, DTM was required to remit contributions to the Pension Fund for all straight time hours worked plus all hours of paid vacations, holidays and sick leave, for a maximum of 2.080 hours per year for each and every employee covered by the collective bargaining agreement. During the period April 1, 2004 through September 30, 2005, DTM was required to remit contributions to the Pension Fund for all straight time hours worked plus all hours of paid vacations, holidays and sick leave, not to

7

exceed 40 hours in any one week for each and every employee covered by the collective

bargaining agreement.

15.     Pursuant to the collective bargaining agreement for its employees represented by

ITPE and working for DTM at the Crystal Plaza # 3 in Alexandria, Virginia, effective November

1, 2005 through March 31, 2007, DTM was required to make contributions to the Pension Fund

at the rate of $1.25 per hour on behalf of each employee covered by the collective bargaining

agreement. Effective November 1, 2004 through October 31, 2005, DTM was required to make

contributions to the Pension Fund at the rate of $1.15 per hour on behalf of each employee

covered by the collective bargaining agreement. Effective April 1, 2004 through October 31,

2004, DTM was required to make contributions to the Pension Fund at the rate of $0.95 per hour

on behalf of each employee covered by the collective bargaining agreement. These contributions

are required to be accompanied by reports listing each bargaining unit employee for whom

contributions are owed, along with the hours worked by each such employee for each monthly

reporting period, plus all hours of paid vacations, holidays and sick leave, for a maximum of

2.080 hours per year for each and every employee covered by the collective bargaining

agreement.

16.     Pursuant to the collective bargaining agreement for its employees represented by

ITPE and working for DTM at the Crystal Plaza # 3 in Alexandria, Virginia, effective November

1, 2005 through March 31, 2007, DTM was required to make contributions to the Health Fund at

the rate of $3.03 per hour on behalf of each employee covered by the collective bargaining

agreement. Effective November 1, 2004 through October 31, 2005, DTM was required to make

contributions to the Health Fund at the rate of $2.95 per hour on behalf of each employee

covered by the collective bargaining agreement. Effective April 1, 2004 through October 31,

**8**

2004, DTM was required to make contributions to the Health Fund at the rate of $2.65 per hour

on behalf of each employee covered by the collective bargaining agreement. These contributions

are required to be accompanied by reports listing each bargaining unit employee for whom

contributions are owed, along with the hours worked by each such employee for each monthly

reporting period, plus all hours of paid vacations, holidays and sick leave, for a maximum of

2.080 hours per year for each and every employee covered by the collective bargaining

agreement.

      17.    Pursuant to the collective bargaining agreement for its employees represented by

ITPE and working for DTM in the Federal Aviation Administration Tower, Houston, Texas,

effective October 1, 2006 through March 31, 2007, DTM was required to make contributions to

the Pension Fund at the rate of $0.60 per hour on behalf of each employee covered by the

collective bargaining agreement. Effective October 1, 2005 through September 30, 2006, DTM

was required to make contributions to the Pension Fund at the rate of $0.50 per hour on behalf of

each employee covered by the collective bargaining agreement. Effective October 1, 2004

through September 30, 2005, DTM was required to make contributions to the Pension Fund at

the rate of $0.40 per hour on behalf of each employee covered by the collective bargaining

agreement. Effective April 1, 2004 through September 30, 2004, DTM was required to make

contributions to the Pension Fund at the rate of $0.30 per hour on behalf of each employee

covered by the collective bargaining agreement. These contributions are required to be

accompanied by reports listing each bargaining unit employee for whom contributions are owed,

along with the hours worked by each such employee for each monthly reporting period, plus

hours for which a bargaining unit employee was paid fro vacation, holidays, or sick leave.

During the period October 1, 2005 through September 30, 2007, DTM was required to remit

9

contributions to the Pension Fund for all straight time hours worked plus all hours of paid vacations, holidays and sick leave, for a maximum of 2.080 hours per year for each and every employee covered by the collective bargaining agreement. During the period October 1, 2003 through September 30, 2005, DTM was required to remit contributions to the Pension Fund for all straight time hours worked plus all hours paid for vacations, holidays and sick leave, for each and every employee covered by the collective bargaining agreement.

18.     Under the terms of the Funds' Trust Agreements, the Funds' Boards of Trustees are expressly required to demand, collect, receive and hold contributions owed to the Funds by contributing employers and to take such steps as may be deemed necessary or desirable to collect such contributions that are due the Funds.

19.     In accordance with the Funds' Trust Agreements, contributing employers are required to pay the requisite contributions to the Trusts on or before the 25th day the month worked by each employee.

20.     The Funds' Trust Agreements further provide that in the event a contributing employer fails to make its required contributions, after ten days of such delinquency, liquidated damages will be imposed for each delinquency in the amount of 20% of the delinquency. The delinquent employer is also obligated to pay interest on the delinquent contributions at the prime rate. In the event the Funds are forced to commence legal proceedings to collect delinquent amounts owed to them, Trust Agreements provide for an audit of the delinquent employer's books and records and provide for an award of unpaid contributions, liquidated damages, interest, costs and attorney fees, and other damages the Court deems proper.

**10**

### DTM'S FAILURE TO PAY CONTRIBUTIONS TO THE FUNDS

21.     DTM failed to make the required monthly contributions in the correct amount to the Health Fund during the period beginning April 1, 2004 and continuing through March of 2007.

22.     Based upon an audit of its payroll records, DTM owes the Health Fund $40,001.95, exclusive of interest and liquidated damages, for under-reported contributions for the period April 1, 2004 through March 31, 2007.

23.     DTM failed to make the required monthly contributions in the correct amount to the Pension Fund during the period beginning April 1, 2004 and continuing through March 31, 2007.

24.     Based upon an audit of its payroll records, DTM owes the Pension Fund $14,961.20, exclusive of interest and liquidated damages, for under-reported contributions the period April 1, 2004 through March 31, 2007.

25.     Based upon the audit of its payroll records, DTM failed to report to the Pension Fund ninety-eight percent (98 %) of the required contribution for which it was obligated and pursuant to Section 10.11 of the Pension Fund's Trust Agreement it is therefore liable to the Pension Fund for the fees associated with the audit of its payroll records.

26.     Based upon DTM's failure to sufficiently comply with its reporting requirement to the Pension Fund, it owes the Pension Fund an additional sum in the amount of $15,746.88.

27.     Based upon the audit of its payroll records, DTM failed to report to the Health Fund ninety-eight percent (98 %) of the required contribution for which it was obligated and pursuant to Section 10.11 of the Health Fund's Trust Agreement it is therefore liable to the Health Fund for the fees associated with the audit of its payroll records.

11

28.     Based upon DTM's failure to sufficiently comply with its reporting requirement to the Health Fund, it owes the Health Fund an additional sum in the amount of $15,746.89.

29.     Despite repeated requests from the Funds, DTM has failed and refused to submit payment for the audit delinquency, and those delinquent amounts owed to them remain outstanding and delinquent.

## INJURY TO THE TRUSTS

30.     DTM's contributions remain delinquent and there is little prospect that, lacking judicial compulsion, it will satisfy its obligations to the Funds.

31.     DTM's actions have caused and continue to cause great harm to the Funds in a variety of ways, including, but not limited to, the following:  they have created uncertainty concerning covered employees' pension credits; they have prevented the crediting of service to covered employees, causing the loss of their employees' health coverage; they have caused the Funds to incur collection and other expenses associated with pursuing repeated delinquencies; they have caused a loss of the time value of the delinquent contributions to the Funds; and they have resulted in a discrediting of the Funds' ability to enforce obligations owed to them, which may result in other employers utilizing the same tactics.  If left unremedied, these injuries will be irreparable.

32.     DTM's actions are in violation of the collective bargaining agreement, the Funds' Trust Agreements, and ERISA Section 515, 29 U.S.C. §1145.

12

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1.     Order DTM to submit to a full payroll audit of its books and records by Plaintiffs' authorized representatives, at DTM's expense;

2.     Award as damages all due and unpaid contributions, with interest at the rate specified in the appropriate Trust Agreements;

3.     Award liquidated damages on all delinquent amounts, as set forth in the Trust Agreements and ERISA Section 502(g)(2), 29 U.S.C. §1132(g)(2);

4.     Order DTM to pay the Health Fund and the Pension Fund the fees associated with the audit as specified in the appropriate Trust Agreements;

5.     Order DTM to reimburse Plaintiffs for all costs incurred in bringing this action, including reasonable attorneys' fees, as provided for in the Funds' respective Trust Agreements and in ERISA Section 502(g)(2), 29 U.S.C. §1132(g)(2); and

6.     Award such other relief as the Court deems just and proper.

Respectfully submitted,

H. David Kelly, Jr.
Beins, Axelrod, P.C.
1625 Massachusetts Avenue, N.W. Suite 500
Washington, D.C.  20036-2001
202-328-7222
202-328-7030 (telecopier)
Dkelly@beinsaxelrod.com

Counsel for the Plaintiffs

Dated: April 15, 2009